In re PROTEST OF BROOKS Regarding Initiative Petition on the Ohio Prescription Drug Fair Pricing Act (Ohio Coalition for Affordable Prescription Drugs et al., Appellants). (Two Cases.)

[Cite as *In re Protest of Brooks,* 155 Ohio App.3d 370, 2003-Ohio-6348.]

Court of Appeals of Ohio,
Third District, Allen and Marion Counties.

Nos. 1–03–16 and 9–03–19.

Decided Nov. 24, 2003.

Donald J. McTigue, for appellants.

David E. Bowers, Allen County Prosecuting Attorney, for appellee Allen County Board of Elections.

Lawrence Babich, Marion County Prosecuting Attorney, for appellee Marion County Board of Elections.

Quintin F. Lindsmith, for protester Keith Brooks.

---

CUPP, Judge.

{¶ 1} Appellant, The Ohio Coalition for Affordable Prescription Drugs, brings these consolidated appeals from the decisions of the Allen County Court of Common Pleas and the Marion County Court of Common Pleas invalidating certain part-petitions for failure to comply with R.C. 3519.05.

{¶ 2} The facts and procedural history pertinent to this appeal are as follows. The appellant seeks to propose a law that it has designated "The Ohio Prescription Drug Fair Pricing Act." The proposal seeks to affect the price at which Ohio residents purchase prescription drugs. To accomplish this, appellant began circulating an initiative petition pursuant to Section 1b, Article II of the Ohio Constitution.

{¶ 3} To be considered valid, a petition must conform to the requirements of R.C. 3519.01 et seq. Initially, the petition must comply with R.C. 3519.05. This provision requires that certain headings, type size, and language appear on the face of a petition. Among these requirements are certain disclosures by the circulators of the petitions. The statute requires that a circulator fill out a compensation statement disclosing the amount of compensation, if any, that the circulator will receive for circulating the petition for signatures and the name and address of the payor. A circulator is also required to sign a declaration verifying both the number of signatures on the petition and that he witnessed each voter sign. Petitions that purport to meet these requirements are filed with the Ohio Secretary of State so that they may be verified.

{¶ 4} To help with the collection of signatures for the petitions at hand, appellant hired a professional petition firm, National Voter Outreach ("NVO"). NVO subcontracted with an individual by the name of John Mitchell to coordinate the circulation of the petitions in the Cincinnati and Dayton areas.

{¶ 5} After the necessary number of signatures had been obtained, the appellant filed the petition with the Secretary of State. The Secretary of State then separated the petition by counties and sent the part-petitions to the respective county board of elections to determine the sufficiency and validity of each part-petition, pursuant to R.C. 3519.15.

{¶ 6} Keith Brooks, an opponent of the initiative petition, filed a written protest with the Allen County Board of Elections on January 17, 2003, and with the Marion County Board of Elections on January 21, 2003. As a consequence,

the Allen and Marion prosecuting attorneys brought suit in their respective Courts of Common Pleas on behalf of their county boards of elections, appellees herein, for verification of the part-petitions, pursuant to R.C. 3519.16. Hearings were held in each county before the respective trial courts to review the disputed part-petitions, to determine the sufficiency of signatures collected in the respective counties, and to verify the part-petitions.

{¶ 7} The Allen County trial court found that several part-petitions contained invalid signatures and other part-petitions contained improperly completed circulator compensation statements. Likewise, the Marion County trial court invalidated one of the eight part-petitions it reviewed because it contained an incomplete circulator compensation statement, and it invalidated four others because the circulator knowingly allowed individuals to sign for others.

{¶ 8} It is from these decisions the appellant appeals, asserting six assignments of error for our review. For clarity of analysis, assignments of error have been combined when appropriate.

### ASSIGNMENT OF ERROR NO. III

"The Allen County trial court erred in invalidating certain part-petitions in finding that the circulator's compensation requirements of R.C. 3519.05 are constitutional."

### ASSIGNMENT OF ERROR NO. VI

"The Marion County trial court erred in invalidating certain part-petitions because it failed to find the circulator compensation provisions of R.C. 3519.05 are unconstitutional."

{¶ 9} Before reaching the appellant's particular arguments regarding the petitions, we will address appellant's assertion that the circulator's compensation statement required by R.C. 3519.05 violates both the Ohio and the United States Constitution.

{¶ 10} On review of statutory acts, a court is bound to give a constitutional rather than an unconstitutional construction if one is reasonably available. *United Air Lines v. Porterfield* (1971), 28 Ohio St.2d 97, 57 O.O.2d 288, 276 N.E.2d 629. This is due to the general presumption in favor of the validity of legislation. R.C. 1.47(A); *State v. Sinito* (1975), 43 Ohio St.2d 98, 72 O.O.2d 54, 330 N.E.2d 896. The burden of showing the unconstitutionality of a statute is upon the one challenging its validity and it must be proven beyond a reasonable doubt. (Citations omitted.) *State v. Meyer* (1983), 14 Ohio App.3d 69, 14 OBR 81, 470 N.E.2d 156. Before we may declare a law unconstitutional, it must appear beyond a reasonable doubt that the legislation and the constitutional

provisions are clearly incompatible. *Woods v. Telb* (2000), 89 Ohio St.3d 504, 511, 733 N.E.2d 1103.

{¶ 11} We consider first the challenge under the Ohio Constitution. Article II, Section 1 of the Ohio Constitution reserves to the people the power to propose laws by initiative and Sections 1a through 1g set forth the manner in which that power may be exercised. Section 1g further provides that laws may be passed to "facilitate their operation" of the initiative process; however, such laws may not limit or restrict the initiative power granted by the Ohio Constitution.

{¶ 12} Appellant contends that the compensation statement does not "facilitate the operation" of the power of the people to propose laws by initiative. Rather, appellant argues that the circulator's compensation statement adds an extra-constitutional requirement to the initiative process that effectively restricts the exercise of the right of referendum.

{¶ 13} The United States Supreme Court has reasoned that disclosure requirements for paid circulators provide voters with information regarding the source and amount of money spent by proponents to place proposed legislation on the ballot. Such requirements also help to avoid the "appearance of corruption by exposing large contributions and expenditures to the light of publicity." *Buckley v. Am. Constitutional Law Found., Inc.* (1999), 525 U.S. 182, 202, 119 S.Ct. 636, 142 L.Ed.2d 599.

{¶ 14} In the case sub judice, we find that the effect of the circulator's compensation statement requirement does not, in any meaningful manner or degree, restrict or limit the ability of people to sign initiative petitions. Rather, it provides potential signers with important information regarding the initiative so that when they are asked by a circulator to sign a petition, they may make a more informed decision whether or not to do so. The disclosure requirement serves to help deter circulation fraud and abuse by encouraging petition circulators to be truthful and self-disciplined. *Buckley,* 525 U.S. at 224, 119 S.Ct. 636, 142 L.Ed.2d 599 If a voter knows whether and how much a particular circulator is being paid, the voter will be better able to evaluate the sincerity of the circulator's statements about the initiative proposal. Id.

{¶ 15} "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process * * *." Id. at 191, 119 S.Ct. 636, 142 L.Ed.2d 599. We find a reasonable reading of R.C. 3519.05 reveals that neither the purpose nor effect of the circulator's compensation statement is to restrict the rights of the people with regard to the initiative process. Rather, the effect is to help ensure the integrity and reliability of the process through public disclosures. By ensuring integrity and reliability in the

initiative petition process, the law facilitates the exercise of the initiative power by the people. Appellant has not demonstrated beyond a reasonable doubt the unconstitutionality of the circulator's compensation statement requirement. Therefore, we do not find that it violates the Ohio Constitution.

{¶ 16} Appellant further contends that the circulator's compensation statement requirement is an unconstitutional infringement under the free speech guarantee of the First Amendment to the United States Constitution. Appellant relies on *Buckley v. Am. Constitutional Law Found., Inc.* (1999), 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599, in support of this contention.

{¶ 17} In *Buckley,* the United States Supreme Court invalidated a Colorado initiative petition statute requiring petition proponents to disclose, by a separate filing, the names and addresses of only those petition circulators who were paid and the amount each circulator received. The Court reasoned, "listing paid circulators and their income from circulation 'forc[es] paid circulators to surrender the anonymity enjoyed by their volunteer counterparts' * * * Colorado's reporting requirements, to the extent they target paid circulators, fail exacting scrutiny." *Buckley,* 525 U.S. at 204, 119 S.Ct. 636, 142 L.Ed.2d 599.

{¶ 18} The appellant claims that the Ohio requirement of a compensation statement on initiative petitions has the same effect as the invalid provisions of the Colorado statute. We do not agree.

{¶ 19} The compensation statement required by R.C. 3519.05 does not target paid circulators while exempting unpaid circulators as the Colorado law did. Rather, under Ohio's statute, *every* circulator, paid or volunteer, must complete the statement. R.C. 3519.05 provides:

"In consideration of his services in soliciting signatures to this petition the solicitor has received or expects to receive _____ from _____ (Whose address is)_____.

"Before any elector signs the part-petition, the solicitor shall completely fill in the above blanks if the solicitor has received or will receive any consideration and if the solicitor has not received and will not receive any consideration he shall insert 'nothing.' "

{¶ 20} The compensation statement required by R.C. 3519.05 is distinguishable from the one at issue in *Buckley.* The Ohio statute does not "force paid circulators to surrender the anonymity enjoyed by their volunteer counterparts;" that is, it does not target paid circulators. The United States Supreme Court's rationale for invalidating the Colorado statute in *Buckley,* does not apply to the facts of the present case.

{¶ 21} Moreover, the *Buckley* Court did not invalidate the Colorado requirement to disclose the names of those who had paid others to circulate initiative

petitions and the amount such payors spent to collect signatures for their petitions. The court in *Buckley* held that the payor disclosure requirement responded to a substantial state interest of deterring fraud and abuse in the circulating of petitions and empowering voters with knowledge of the circulator's financial interest in the activity. We find that the compensation statement required by R.C. 3519.05 also responds to this interest, in that it has the effect of disclosing the names of the payors of petition circulators and amounts paid. For these reasons, we hold that the Ohio circulator compensation statement does not violate the First Amendment of the United States Constitution. We further hold that neither the Allen County nor Marion County trial courts erred in finding that the circulator's compensation statement, required by R.C. 3519.05, was constitutional.

{¶ 22} Accordingly, appellant's third and sixth assignments of error are overruled.

### ASSIGNMENT OF ERROR NO. II

"The Allen County trial court erred in invalidating certain part-petitions on the basis of the amount of compensation set forth in the compensation statement on such petitions."

### ASSIGNMENT OF ERROR NO. IV

"The Marion County trial court erred in invalidating certain part-petitions on the basis of the amount of compensation set forth in the compensation statement on such petitions."

{¶ 23} We address first appellant's argument within this assignment of error that both the Allen and Marion County Common Pleas Courts lacked subject matter jurisdiction to invalidate part-petitions for deficiencies in the completion of the circulator's compensation statements. The determination of subject matter jurisdiction is reviewed de novo, and we are not required to award any deference to the trial court's determination of the matter. *McClure v. McClure* (1997), 119 Ohio App.3d 76, 694 N.E.2d 515.

{¶ 24} Appellant claims that R.C. 3519.06, which grants jurisdiction to the courts of common pleas over an action pertaining to the validity of an initiative petition, restricts the trial court's review to specific findings of the election board and to the verification of signatures, and does not extend jurisdiction to the verification of the entire part-petition.

{¶ 25} R.C. 3519.16 provides:

"If the circulator of any part-petition, the committee interested therein, or any elector files with the board of elections a protest against the board's

findings made pursuant to section 3519.15 of the Revised Code, then the board shall proceed to *establish the sufficiency or insufficiency of the signatures and of the verification thereof* in an action before the court of common pleas in the county." (Emphasis added.)

{¶ 26} In reviewing a statute, it is presumed that the entire statute is intended to be effective. R.C. 1.47(B). R.C. 3519.16 sets forth a procedure by which the validity of part-petitions may be challenged. However, if R.C. 3519.16 is read in conjunction with the other provisions of Chapter 3519, namely R.C. 3519.05 and 3519.06, it is evident that the courts of common pleas have jurisdiction not only to verify the signatures on a part-petition but also jurisdiction to verify the entire part-petition, including the circulator's compensation statement.

{¶ 27} R.C. 3519.06 provides:

"No initiative or referendum part-petition is properly verified if it appears on the face thereof, or is made to appear by satisfactory evidence:

"(A) *That the statement required by section 3519.05 of the Revised Code is not properly filled out;*

"(B) That the statement is not properly signed;

"(C) That the statement is altered by erasure, interlineation, or otherwise;

"(D) That the statement is false in any respect;

"(E) That any one person has affixed more than one signature thereto." (Emphasis added.)

{¶ 28} R.C. 3519.05 sets forth the form for petitions and requires circulators to complete the compensation statement. R.C. 3519.06 provides for verification of a petition. Reading these two sections in conjunction leads logically to the conclusion that verification of the circulator's compensation statement is necessary to the verification of the petition. *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 6, 591 N.E.2d 1186. Therefore, we find that the Allen County and Marion County trial courts had jurisdiction to evaluate the circulator's compensation statements contained in the respective part-petitions.

{¶ 29} Appellant further argues the Allen County trial court was lacking jurisdiction because the Allen County prosecuting attorney failed to file a motion to determine the sufficiency of the part-petitions within the time allowed. Pursuant to R.C. 3519.16, such motion must be brought within three days after the protest was filed. Appellant contends that because the appellee did not file the "Petition to Determine the Sufficiency or Insufficiency of Certain Initiative Part-petitions" within three days of filing the protest, the Allen County trial court was without jurisdiction to hear the case. On the contrary, we find that the filing of the action was timely for the reasons that follow.

{¶ 30} Civ.R. 6(A) provides that "[w]hen the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." The protest was filed in Allen County on Friday, January 17, 2003. Excluding Saturday, January 18 and Sunday, January 19, as well as Monday, January 20, Martin Luther King Day, a legal holiday, the appellee would have had until Thursday, January 23, 2003 to file their petition. The petition was filed on Wednesday, January 22, 2003, within the time prescribed by statute.

{¶ 31} Even if appellees had not filed the petition within the three-day period, the delay would not have destroyed the jurisdiction of the Allen County trial court. "As a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure." (Citation omitted.) *State ex rel. Ragozine v. Shaker* (2002), 96 Ohio St.3d 201, 772 N.E.2d 1192.

{¶ 32} A general objective of the three day period is to encourage prompt action to prevent unjust delay that would abuse or frustrate the initiative process. R.C. 3519.16 does not, however, express an intent to restrict the jurisdiction of the court for failure to meet the three-day requirement nor does it specify any consequence if the action is not performed within the stated three-day period. Therefore, we find that, under the circumstances in this case, the time for performance contained in R.C. 3519.16 is directory. Even if we were to find that the appellee had not performed within the three-day period, performance within a reasonable time would not impose a statutory bar to consideration by the court.

{¶ 33} Having found that the Allen County and Marion County trial courts had jurisdiction to evaluate the circulator's compensation statements, we now consider the appellant's specific arguments asserting error in the trial courts' invalidation of certain statements for failure to properly insert the compensation received for circulating the petitions.

{¶ 34} Our analysis of an appeal from the trial court's construction of a statute is conducted under a de novo standard of review since statutory interpretation is a matter of law. *State v. Wemer* (1996), 112 Ohio App.3d 100, 103, 677 N.E.2d 1258. We review the decision independently and without deference to the trial court's interpretation.

{¶ 35} The settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that substantial compliance is permissible. *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 539, 757 N.E.2d 319. As noted supra, when properly read together, R.C. 3519.05

and 3519.06 require proper completion of the circulator's compensation statement before the part-petition may be verified. *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 6, 591 N.E.2d 1186.

{¶ 36} The Allen County trial court reviewed nine part-petitions containing between 50 and 75 signatures each and found that Nos. 1035, 1036, 1039 and 3842 were invalid because the circulator's compensation statements were improperly filled out. The trial court specifically found that there was no true disclosure as to how much had been paid to individual circulators. One part-petition listed "$29.00" as the amount received, another listed "100–125" and others listed the number of hours worked. The Allen County trial court found that these amounts were invalid, as they did not indicate whether the amount was per hour, per day or per signature. For the same reasons, the Marion County trial court invalidated part-petition No. 4403, which listed "1.00 to 1.25" as the amount received.

{¶ 37} Appellant argues that because R.C. 3519.05 provides no guidance as to what constitutes proper completion of the compensation statement, these disclosures substantially comply with the statute. We disagree.

{¶ 38} R.C. 3519.06 declares that a part-petition is invalid if it is not "properly filled out" or "false in any respect." The amounts of compensation contained in part-petitions No. 1035, 1036, 3842 and 4403 are not properly filled out. The amount of compensation is not apparent from the face of the petition and, from a review of the record, was not made to appear by satisfactory evidence. The compensation disclosures omit necessary facts, such as "per hour, per day or per signature," to determine the amount of compensation received by the circulators.

{¶ 39} With respect to part-petition No. 1039, however, which listed "$29.00" as the amount of compensation received, we do not find that this petition was not properly filled out. Twenty-nine dollars is a fixed sum rather than a range of pay or amount of hours worked. Moreover, there is nothing in the record to suggest that the circulator of part-petition No. 1039 was not paid $29.00 for circulating that particular part-petition. Therefore, the Allen County trial court erred in invalidating part-petition No. 1039.

{¶ 40} Appellant argues that the Allen County trial court erred in invalidating part-petitions Nos. 1035 and 1036 on the basis that the compensation statement reported the numbers of hours worked. Appellant asserts that no evidence was presented that would indicate the circulators were paid at all for those two petitions. Appellant's argument is without merit, as the statute specifically directs the circulator to insert "nothing" in the blank if he will not receive compensation. If the circulators of part-petitions Nos. 1035 and 1036 were paid, the number of hours worked was an invalid amount of compensation. If they were not paid, they still failed to properly complete the compensation statement.

{¶ 41} Courts must give effect to the words used in a statute and may not delete or insert words or ignore plain and unambiguous language. See *State ex rel. Burrows v. Indus. Comm.* (1997), 78 Ohio St.3d 78, 676 N.E.2d 519. Based on the plain meaning of "compensation," we find part-petitions No. 1035, 1036, 3842 and 4403 did not accurately set forth the amount the circulators were to receive. We further find that the circulator's compensation statements contained in these part-petitions did not strictly comply with the statutory requirement of R.C. 3519.05, and the statute does not allow for substantial compliance. However, we find part-petition No. 1039 was in compliance with R.C. 3519.05. Accordingly, we hold that the Allen County trial court did not err in invaliding part-petitions Nos. 1035, 1036, and 3842 on the basis of the amount of compensation contained in the circulator's compensation statements, but did err in invalidating part-petition No. 1039. We hold that the Marion County trial court did not err in invaliding part-petition No. 4403.

{¶ 42} Appellant's second assignment of error is sustained in part and overruled in part. Appellant's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. I

"The Allen County trial court erred in invalidating certain part-petitions on the basis of the address of the payor set forth in the compensation statement on such petitions."

{¶ 43} The circulator's compensation statement found in R.C. 3519.05 informs the public about the source of funding for ballot initiatives and discloses who pays the petition circulators and how much the circulators are paid. The statute requires that a circulator of a petition not only disclose the name of the person or organization that is paying him, but also the address of the payor.

{¶ 44} The Allen County trial court invalidated part-petition No. 3842, which listed John Mitchell as the payor in the compensation statement whose address is "2301 E. Sharon Rd., Cincinnati, OH 45241." The trial court found that this address was false, as it was the address of a Red Roof Inn where Mitchell stayed during the circulation of the petitions and that Mitchell's actual residence was in San Diego, California.

{¶ 45} Although we found herein that the Allen County trial court did not err in invalidating part-petition No. 3842 based on the incomplete amount of compensation contained in the circulator's compensation statement, we determine that the address of the payor listed on this particular part-petition would also be a basis for invalidation.

{¶ 46} The American Heritage Dictionary defines "address" as "the location at which a particular organization or person may be found or reached." American

Heritage Dictionary (2d Ed.1985) 78. Mitchell could be found or reached at the Red Roof Inn only for five nights in 2002. One purpose of the circulator's compensation statement is to provide a way in which the payor of a petition can be contacted in the event of any complications during the verification process such as sufficiency of signatures, the form of the petition, or, as in this case, litigation. Providing the address of a hotel where the payor stayed for less than a week does not serve this purpose.

{¶ 47} The disclosure of the payor's address also serves to protect the reliability and integrity of the initiative process. See *Buckley v. Am. Constitutional Law Found., Inc.* (1999), 525 U.S. 182, 191, 119 S.Ct. 636, 142 L.Ed.2d 599. The United States Supreme Court recognized that disclosure provides the voter with information "as to where political campaign money comes from and how it is spent, thereby aiding electors in evaluating those who seek their vote." Id. at 202, 119 S.Ct. 636, 142 L.Ed.2d 599. Listing a Cincinnati address for the payor on the circulator's compensation statement that is then presented to the voter would cause the voter to believe that the funding for the ballot initiative was being paid by someone who lived in Cincinnati—that is, someone who had an interest, as a resident of the state, in the initiative petition.

{¶ 48} Pursuant to R.C. 3519.05 and 3519.06, we find the address of the payor contained in part-petition No. 3842 to be invalid. Therefore, the Allen County trial court did not err in invalidating this part-petition on the basis of the address provided.

{¶ 49} Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. V

"The Marion County trial court erred in invalidating, *in toto,* certain part-petitions on the basis of one person signing for another."

{¶ 50} R.C. 3519.06 provides that "no initiative or referendum part-petition is properly verified if it appears on the face thereof, or is made to appear by satisfactory evidence * * * that any one person has affixed more than one signature thereto."

{¶ 51} The Marion County trial court found that part-petitions Nos. 858, 862, 1636 and 1637 contained several instances of individuals signing for others. Although the Marion County trial court judgment entry reflects that the parties agreed that this did occur, the appellant argues that this misconduct does not require or permit the invalidation of entire petitions. Appellant asserts that the proper remedy is simply to strike the invalid signatures.

{¶ 52} R.C. 3519.05 provides that in addition to the compensation statement, circulators of initiative petitions must sign the following:

"I, _____, declare under penalty of election falsification that I am the circulator of the foregoing petition paper containing the signatures of _____ electors, that the signatures appended hereto were made and appended in my presence on the date set opposite each respective name, and are the signatures of the persons whose names they purport to be, and that the electors signing this petition did so with knowledge of the contents of same."

{¶ 53} This requirement is constitutional, found in the Ohio Constitution, Article II, Section 1g. That section provides, "The names of all signers to such petitions shall be written in ink, each signer for himself. To each part of such petition shall be attached the statement of the circulator, as may be required by law, that he witnessed the affixing of every signature."

{¶ 54} The circulators of the particular petitions in question signed these statements. In doing so, they declared that the signatures contained therein were the signatures of the persons whose names they purported to be. Further, by signing this statement, the circulator declared that he had knowledge the signatures were valid because they were signed in his presence, i.e., he witnessed the signing. Appellant concedes that these declarations were false but claims that the complete invalidation of the part-petition was not the proper remedy. For the following reasons, we disagree.

{¶ 55} In *State ex rel. Commt. for the Referendum of Lorain Ordinance*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, the Ohio Supreme Court found that a board of elections had acted properly in invalidating an entire part-petition on the basis that the circulator had not witnessed every signature. The *Lorain* court found that since election laws require strict compliance and the circulator's statement did not comply with those laws, the board acted appropriately in striking the part-petition.

{¶ 56} We find that because the circulators of part-petitions Nos. 858, 862, 1636, and 1637 allowed individuals to sign for others, they could not have witnessed every signature or, if they did, they knew that some signatures were not affixed by the persons whose names they purported to be. Either way, the circulator's statements on these part-petitions are false. In applying R.C. 3519.05 and 3519.06, we hold that a false circulator's statement renders a part-petition invalid. Accordingly, we hold the Marion County trial court did not err in invaliding part-petitions No. 858, 862, 1636, and 1637.

{¶ 57} Appellant's fifth assignment of error is overruled.

{¶ 58} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we affirm in part and reverse in part the judgment of the Allen County trial court on the sole ground that part-petition No. 1039 should not have been found invalid and remand the matter for further proceedings consis-

tent with this opinion. We hereby affirm the judgment of the Marion County trial court.

Judgment affirmed in part and
reversed in part in Allen County
case No. 1–03–16.

Judgment affirmed in Marion
County case No. 9–03–19.

THOMAS F. BRYANT, P.J., and WALTERS, J., concur.