Per Curiam.
{¶ 1} This is an expedited election case in which relators seek a writ of mandamus requiring respondents, Secretary of State Jon Husted and the boards of elections of Athens, Meigs, and Portage Counties (“the boards of elections”),[1] *333 to place proposed charters for those counties on the ballot at the November 8, 2016 general election. We hold that relators are not entitled to the writ.

Factual and procedural history

{¶ 2} Relators are members of the committees that filed petitions under Article X, Section 3 of the Ohio Constitution and R.C. 307.94 proposing the adoption of county charters in Athens, Meigs, and Portage Counties.[2]
{¶ 3} Each of the boards of elections reviewed the petition filed in its county to determine its validity and whether it contained sufficient signatures. Though determining that the petitions contained sufficient signatures, the boards unanimously rejected the petitions as invalid. Relators filed a timely protest of each of these decisions pursuant to R.C. 307.95(B). On August 15, 2016, Secretary Husted issued a single decision denying all three protests and instructing the boards not to place the proposed charters on the ballot.
{¶ 4} On August 19, 2016, relators initiated this action as an expedited election matter pursuant to S.CtPrac.R. 12.08. They seek a writ of mandamus requiring Secretary Husted and the boards of elections to place the proposed charters on the ballot.

Summary of the issues

{¶ 5} The Athens County Board of Elections rejected the Athens County committee’s petition because it failed to alter the form of government, failed to vest powers from the municipalities and townships with the county, and relied on the Revised Code to determine the qualifications and salaries of elected officials. The Meigs County and Portage County boards of elections rejected the petitions filed in their counties because they failed to provide for a county executive under R.C. 302.02.
{¶ 6} In denying relators’ protests, Secretary Husted reasoned that the petitions were invalid because the proposed charters failed to provide for the performance of all duties imposed on county officers. He also indicated that while the petitions could be interpreted as attempting to establish an alternative form of government under R.C. Chapter 302, the proposed charters failed to *334 provide for either an elective or appointive county executive. He now argues that the petitions are invalid because the proposed charters do not include the information required under Article X, Section 3 of the Ohio Constitution to constitute a valid county charter.
{¶ 7} Relators contend that the secretary of state’s and the boards of elections’ pre-election examination of the content of the proposed charters violated their constitutional rights; alternatively, they argue that the secretary of state and the boards of elections abused their discretion in conducting the pre-election review. They contend that the proposed charters do include a form of government and do provide for the exercise of all necessary powers and duties.

Legal analysis

Pre-election review of the proposed charters

{¶ 8} Article X, Section 3 of the Ohio Constitution requires a county charter to set forth certain information.
Every such charter shall provide the form of government of the county and shall determine which of its officers shall be elected and the manner of their election. It shall provide for the exercise of all powers vested in, and the performance of all duties imposed upon counties and county officers by law.
{¶ 9} We have previously determined that it is within the secretary of state’s discretion to determine whether a proposed county charter is invalid on the ground that it does not set forth the form of government, “which is the sine qua non of a valid charter initiative.” State ex rel. Walker v. Husted, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419, ¶ 24. Similarly, the county boards of elections have the authority “to review, examine, and certify ‘the sufficiency and validity of petitions.’ ” Id. at ¶ 11, quoting R.C. 3501.11(K).
{¶ 10} Relators, however, claim that permitting any pre-election review of the content of their proposed charters violates their First Amendment rights and ask us to overturn Walker “to the extent that it authorizes pre-election review of the substance of the Charters at issue.”
{¶ 11} Walker, however, does not stand for the proposition that the secretary of state or a board of elections may conduct a substantive review of the content of a proposed charter; instead, Walker recognizes the authority of election officials to determine whether a charter initiative meets the threshold requirements for inclusion on the ballot. Here, as in Walker, the boards of elections and the secretary of state invalidated the petitions on the ground that the proposed *335 charters failed to set forth the information required under Article X, Section 3 of the Ohio Constitution. Their determinations were consistent with our prior decisions authorizing election officials to determine whether a proposal exceeds the scope of the authority under which it is placed on the ballot. See, e.g., State ex rel. Choices for South-Western City Schools v. Anthony, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582 (determining that the board of elections did not abuse its discretion by refusing to place an attempted levy repeal on the ballot under a statutory provision authorizing ballot measures for levy reductions).
{¶ 12} Relators further contend that the secretary of state and the boards of elections violated another fundamental right — an asserted right to local self-government — by imposing requirements on a county charter petition. However, we are reluctant to consider the broader application of Article X, Section 3 in the context of this expedited mandamus case, which seeks to place specific proposals on the ballot. Relators have failed to persuasively demonstrate why we should recognize a new fundamental right in the current proceeding.
{¶ 13} Moreover, there is no indication that the boards of elections or the secretary of state attempted to thwart the principles of local self-government. They did not deny relators the right to establish a charter form of county government; instead, they merely examined the charter initiatives to determine whether they met the threshold requirements for inclusion on the ballot.
{¶ 14} Pursuant to Walker, the secretary of state and the boards of elections did not violate relators’ constitutional rights by examining the proposed county charters to determine whether they included the information required under Article X, Section 3 to constitute a valid charter initiative.

Validity of the petitions under Article X, Section 3

{¶ 15} In support of his decision denying relators’ protests, Secretary Husted argues that the proposed charters were deficient for failing to provide for the exercise of “all powers” vested in, and for failing to provide for the performance of “all duties” imposed upon, counties and county officers. The boards of elections of Athens and Portage Counties similarly contend that the proposed charters failed to adequately provide for the exercise of these powers and the performance of these duties.
{¶ 16} The proposed charters include broad language ostensibly fulfilling this requirement. Other than the name of the specified county, the language in all three proposals is identical. The relevant charter language states:
The County * * * is responsible within its boundaries for the exercise of all powers vested in, and the performance of all duties imposed upon, counties and County officers by general law * * *.
*336 [[Image here]]
When not prescribed by the Charter or by amendment to this Charter, by local law enacted by the County Commissioners, or by local law enacted by the people, such powers shall be exercised in the manner prescribed by the Constitution of Ohio or by general law.
{¶ 17} Secretary Husted and the boards of elections reasonably determined that this language is insufficient to provide for the exercise of all powers vested in, and the performance of all duties imposed upon, counties and county officers. As in Walker, the powers and duties are not individually delineated, forcing one to “look to sources outside the proposed charters to determine the form of government they purport to establish, and therefore they do not satisfy the legal prerequisites.” Walker, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419, at ¶ 23.
{¶ 18} Accordingly, we conclude that the secretary of state and boards of elections did not abuse their discretion in determining that the proposed county charters fail to satisfy the requirements under Article X, Section 3 of the Ohio Constitution for a valid charter initiative.
Writ denied.
O’Connor, C.J., and Pfeifer, O’Donnell, LANziNGER,'and French, JJ., concur.
Kennedy, J., concurs in judgment only.
O’Neill, J., dissents, with an opinion.

. The Athens County Board of Elections includes Helen Walker, Kate McGuckin, Ken Ryan, and Aundrea Carpenter-Colvin. The Meigs County Board of Elections includes Charles E. Williams, *333 David W. Fox, Rita Slavin, and James V. Stewart. The Portage County Board of Elections includes Craig M. Stephens, Patricia Nelson, Andrew Manning, and Doria Daniels.

. Virginia L. Coover, John Howell, Richard McGinn, Michael H. Rowe, and Sally Jo Wiley are members of the committee that filed the Athens County petition. Dennis J. Sargent, Kathy Lynn Sargent, Gregory D. Howard, and Marsha Nagy Whitton are members of the committee that filed the Meigs County petition. Kathleen M. Schumann, Gwen B. Fischer, Bradford Brotje, JoEllen Armstrong, and Sandra Engle are members of the committee that filed the Portage County petition.