[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Bolzenius v. Preisse,* **Slip Opinion No. 2018-Ohio-3708.**]

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3708

THE STATE EX REL. BOLZENIUS ET AL. *v.* PREISSE ET AL.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Bolzenius v. Preisse,* **Slip Opinion No. 2018-Ohio-3708.**]

*Elections—Mandamus—Writ of mandamus sought to compel board of elections to place proposed city ordinance on the ballot—Proposed ordinance attempts to enact provisions that are beyond the scope of municipality's legislative power—Writ denied.*

(No. 2018-1221—Submitted September 11, 2018—Decided September 14, 2018.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relators, six Columbus electors,[1] seek a writ of mandamus to compel respondents, the members of the Franklin County

_____

[1] The relators are Sandra M. Bolzenius, Karyn A. Deibel, Connie M. Hammond, Robert R. Krasen, William M. Lyons, and Gregory Thomas Pace.

Board of Elections (collectively, the "board members"),[2] to place a proposed city ordinance on the November 6, 2018 ballot. If adopted, the proposal would establish a "bill of rights" related to water, soil, and air protection and prohibit certain oil-and-gas-extraction activities within the city. The board members excluded the measure from the ballot, finding that the proposed ordinance is beyond the city's legislative power because it would, among other things, create new causes of action. Because the board members did not abuse their discretion, we deny the writ.

## I.  FACTUAL BACKGROUND

{¶ 2} Relators seek the adoption of a municipal ordinance that would establish for Columbus residents—and for "natural communities and ecosystems" in the city—a "Community Bill of Rights for Water, Soil, and Air Protection." Among the rights enumerated are rights to "Potable Water," "Clean Air," "Safe Soil," and "Peaceful Enjoyment of Home" and the "Right to be Free from Toxic Trespass." The proposal also would declare that "[n]atural communities and ecosystems, including, but not limited to, wetlands, streams, rivers, aquifers, and other water systems, possess the rights to exist and flourish within the City of Columbus."

{¶ 3} In an effort to secure and protect these rights, relators' proposal would prohibit most hydrocarbon-extraction activities within the city and impose strict liability on any government or corporation that violates its terms. It also purportedly would invalidate any permit or license "issued by any state, federal or international entity that would violate the prohibitions of this ordinance or any rights secured by this Ordinance, the Ohio Constitution, the United States Constitution, or other laws." Any violation of the ordinance would be a first-degree misdemeanor. The proposed ordinance provides that "any resident of the City of Columbus" may "enforce the rights and prohibitions of this Community Bill of

---

[2] The board members are Douglas J. Preisse, Kimberly E. Marinello, Michael E. Sexton, and Brad K. Sinnott.

2

Rights through an action brought in any court possessing jurisdiction over activities occurring within the City."

{¶ 4} On June 26, 2018, the committee formed to place the measure on the ballot submitted its part-petitions to the Columbus city clerk. After the Franklin County Board of Elections certified a sufficient number of valid signatures to qualify the measure for the ballot, the Columbus City Council, on July 30, passed an ordinance instructing the elections board to place the initiative petition on the November 2018 ballot. Before the matter was considered by the elections board, two Columbus electors, Loretta Settelmeyer and Robert Wall, protested the proposed measure, arguing that it does not comply with the Columbus City Charter's requirements for initiative petitions and that it is outside the city's legislative power. The board members agreed with the latter argument and on August 24 voted to exclude the initiative from the ballot.

{¶ 5} On August 28, relators filed this original action seeking a writ of mandamus to compel the board members to certify the initiative petition for placement on the ballot. On August 31, we granted a motion to intervene filed by Settelmeyer and Wall (collectively, the "intervening respondents").

## II. ANALYSIS

### A. The board members properly determined that the proposed ordinance is outside the city's power to enact legislation

{¶ 6} To be entitled to a writ of mandamus, relators must prove, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board members to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Given the proximity of the November election, relators lack an adequate remedy in the ordinary course of the law. *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 27. To satisfy the first two requirements, relators must show

that the board members engaged in fraud or corruption, abused their discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9. Because relators make no allegation of fraud or corruption, they must show that the board members abused their discretion or disregarded the law when they rejected the initiative petition.

**{¶ 7}** In their first proposition of law, relators assert that they have a clear right to have their proposed ordinance placed on the ballot because their initiative petition satisfies the signature requirement and Columbus city council passed an ordinance calling for placement of the measure on the ballot. Relators make three basic arguments in support of their claim. First, they contend that the board members have only a ministerial role with respect to initiative petitions, with no legitimate statutory authority to exclude a measure from the ballot for substantive legal reasons. Second, they argue that the separation-of-powers doctrine prevents the board members from deciding substantive legal questions and thus renders unconstitutional the statutory amendments introduced by 2016 Sub.H.B. No. 463 ("H.B. 463"), which permit boards of elections to determine whether a proposed ordinance is beyond a municipality's legislative power. Finally, they assert that Columbus Charter 42-11 prevents the board members from making substantive legal determinations regarding relators' proposed ordinance. We reject these arguments.

*1. R.C. 3501.11(K)(1) authorizes a county board of elections to determine*
*whether a proposed ordinance is beyond a municipality's legislative power*

**{¶ 8}** Before the General Assembly enacted H.B. 463, we interpreted former R.C. 3501.11(K) (now R.C. 3501.11(K)(1))—which grants county boards of elections the power to "[r]eview, examine, and certify the sufficiency and validity of petitions"—as authority for the boards "to determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative." *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio

St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 9. We reaffirmed that reading of former R.C. 3501.11(K) in *State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696. In *Sensible Norwood*, we concluded that under former R.C. 3501.11(K), an elections board was authorized to exclude an initiative petition from the ballot if the initiative petition sought to enact municipal legislation that would be beyond a municipality's legislative power. *Id.* at ¶ 9-12.

{¶ 9} H.B. 463, effective April 6, 2017, introduced new provisions related to the authority and duty of elections boards to review the substantive terms of proposed ballot measures. For example, the act added R.C. 3501.11(K)(2), which requires elections boards to examine an initiative petition "to determine whether the petition falls within the scope of authority to enact via initiative." And it added R.C. 3501.38(M)(1)(a), which requires elections boards to examine an initiative petition to determine

> [w]hether the petition falls within the scope of a municipal political subdivision's authority to enact via initiative, including, if applicable, the limitations placed by Sections 3 and 7 of Article XVIII of the Ohio Constitution on the authority of municipal corporations to adopt local police, sanitary, and other similar regulations as are not in conflict with general laws, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot.

Importantly, H.B. 463 retained the language of former R.C. 3501.11(K), recodifying it as R.C. 3501.11(K)(1).

{¶ 10} In *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, we held that R.C. 3501.11(K)(1) authorizes elections boards " 'to

determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative.' " *Id*. at ¶ 11, quoting *Youngstown* at ¶ 9. Thus, without relying on the changes introduced by H.B. 463, we again held that an elections board has the authority to determine whether a municipal initiative falls within the municipality's legislative power. *Id*. at ¶ 15.

**{¶ 11}** Guided by *Flak*, we apply our pre-H.B. 463 caselaw in this case. Accordingly, we must determine whether the board members abused their discretion in determining that the proposed ordinance exceeds Columbus's legislative power. *See Flak* at ¶ 9, citing *Jacquemin*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, at ¶ 9.

**{¶ 12}** The board member who moved to invalidate the initiative petition cited three reasons in support of his conclusion that the proposed ordinance is outside Columbus's legislative power: the proposal would regulate oil-and-gas extraction and transportation, it would regulate corporations, and it would create new causes of action. It is not necessary for us to consider the first two reasons, because the board members clearly acted within their discretion by rejecting the petition for the third reason.

**{¶ 13}** Section 4(b) of the proposed ordinance would authorize "any resident of the City of Columbus" to "enforce the rights and prohibitions of this Community Bill of Rights through an action brought in any court possessing jurisdiction over activities occurring within the City." This provision is similar to the offending provision in *Flak* that would have authorized "private citizens to enforce their rights * * * by filing suit as a private attorney general." *Flak* at ¶ 4. Like the proposal in *Flak*, the proposed ordinance here would create a new cause of action—something we have held municipalities lack the power to do. *See id*. at ¶ 15. Because Columbus clearly lacks the power to enact the proposed ordinance, we hold that the board members did not abuse their discretion in keeping relators' proposal off the ballot.

*2. We need not reach relators' constitutional challenges to H.B. 463*

**{¶ 14}** Relators challenge the constitutionality of H.B. 463 on two grounds. They argue that the statutory provisions permitting the board to conduct a substantive review of ballot initiatives violate the separation-of-powers doctrine, and that the bill itself violates the one-subject rule in Article II, Section 15(D) of the Ohio Constitution. Because we have already found that the board had the authority to exclude the proposal from the ballot under our pre-H.B. 463 caselaw, we need not reach the constitutionality of H.B. 463 in this case. *See Flak*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, at ¶ 17 ("we do not reach constitutional issues unless it is necessary to do so"), citing *State ex rel. BSW Dev. Group v. Dayton*, 83 Ohio St.3d 338, 345, 699 N.E.2d 1271 (1998).

*3. Columbus Charter 42-11 does not conflict with or supersede R.C. 3501.38(M)(1)(a)*

**{¶ 15}** Relators also argue that Columbus Charter 42-11 overrides R.C. 3501.38(M)(1)(a) and prevents preenactment review of a proposed ordinance by the board of elections. Relators contend that the city-charter provision conflicts with the statute and that under the city's home-rule authority, the local provision controls as "a matter of local self-government." *See State ex rel. Minor v. Eschen*, 74 Ohio St.3d 134, 138, 656 N.E.2d 940 (1995) ("In matters of local self-government, if a portion of a municipal charter expressly conflicts with parallel state law, the charter provisions will prevail"). We reject this argument because relators' initial premise—that the charter provision conflicts with R.C. 3501.38(M)(1)(a)—is unfounded.

**{¶ 16}** Columbus Charter 42-11 provides:

> Council action on a petition for any proposed ordinance, referendum, or charter amendment shall be by ordinance. No city officer may consider the subject matter of a petition when

determining the legal sufficiency thereof, except as required to assure compliance with applicable provisions of this charter, general laws of the state, or ordinance of council. Any petition and any signatures upon the part-petitions thereof found to be sufficient as provided herein shall be presumed to be in all respects sufficient, unless not later than forty-five days before the election, it shall be otherwise proven.

{¶ 17} Relators argue that Columbus Charter 42-11 conflicts with R.C. 3501.38(M)(1)(a), because the charter provision prohibits the consideration of the subject matter of a petition while the statute requires a substantive examination. Contrary to relators' argument, there is no conflict between the two provisions. Columbus Charter 42-11 requires Columbus City Council to take action on a petition by ordinance and prohibits a "city officer" from considering the subject matter of a petition when determining the legal sufficiency of the measure. R.C. 3501.38(M)(1)(a), in contrast, instructs "the board of elections" regarding the way it shall examine an initiative petition when determining whether the measure should be placed on the ballot. By their plain terms, the two provisions apply to different political bodies carrying out different governmental roles. We therefore reject relators' argument.

## B. Relators' free-speech argument fails

{¶ 18} In their second proposition of law, relators assert that the decision to exclude the proposed ordinance from the ballot violates the First Amendment to the United States Constitution and Article I, Section 11 of the Ohio Constitution. According to relators, the board members impermissibly excluded the initiative petition from the ballot based on their review of the content of the proposed measure. We reject this argument because there is no evidence suggesting that the board members rejected the initiative petition based on the particular message

8

relators sought to convey. *See Reed v. Gilbert*, ___ U.S. ___, 135 S.Ct. 2218, 2227, 192 L.Ed.2d 236 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed"); *State ex rel. Ethics First—You Decide Ohio Political Action Commt. v. DeWine*, 147 Ohio St.3d 373, 2016-Ohio-3144, 66 N.E.3d 689, ¶ 23 (stating that government action is not content-based if it "applies to all petitions, irrespective of the substantive message the petition seeks to communicate"). The board members voted to exclude the initiative from the ballot because Columbus lacks the power to create causes of action. That restriction is content-neutral because it applies to all municipal initiative proposals—not just relators'—regardless of the proposal's content.

### C. We need not reach relators' final argument

{¶ 19} Through their fourth proposition of law, relators ask us to require the board members to modify the ballot-summary language prepared by Columbus City Council. Because we deny the writ, this proposition is moot and we need not address it.

### III. CONCLUSION

{¶ 20} Applying pre-H.B. 463 caselaw, we deny the writ and hold that the board members did not abuse their discretion in finding that the proposed ballot measure is beyond the scope of Columbus's legislative power.

Writ denied.

O'CONNOR, C.J., and O'DONNELL, FRENCH, DEWINE, and DEGENARO, JJ., concur.

KENNEDY, J., concurs in judgment only.

FISCHER, J., dissents, with an opinion.

_____

**FISCHER, J., dissenting.**

{¶ 21} I respectfully dissent.

**{¶ 22}** This court has not previously decided whether the statutory amendments introduced by 2016 Sub.H.B. No. 463 ("H.B. 463") are unconstitutional in violation of the separation-of-powers doctrine, and a majority of the court continues to avoid that question. In *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, ¶ 17, this court specifically stated that "we leave consideration of the constitutionality of [H.B. 463] for another day." In *State ex rel. Khumprakob v. Mahoning Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2018-Ohio-1602, ___ N.E.3d ___, I wrote an opinion concurring in judgment only in which I concluded that portions of H.B. 463 are unconstitutional and that certain pre-H.B. 463 decisions of this court had been decided in error and should be overruled. *Id.* at ¶ 42 (Fischer, J., concurring in judgment only). However, in *Khumprakob*, the majority once again declined to reach the constitutionality issue and decided that case by distinguishing *Flak* on a factual basis. *Khumprakob* at ¶ 5-9.

**{¶ 23}** In *State ex rel. Espen v. Wood Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2017-Ohio-8223, ___ N.E.3d ___, which this court decided before *Khumprakob* but after *Flak*, the three justices joining the per curiam opinion agreed with the board of elections' determination that it had no authority to invalidate a charter petition based on a substantive evaluation of that petition's legality. *Id.* at ¶ 16. The lead opinion specifically stated that "[t]o the extent that R.C. 3501.38(M)(1)(a) authorizes and requires boards of elections to make substantive, preenactment legal evaluations, it violates the separation-of-powers doctrine and is unconstitutional." *Id.* at ¶ 15.

**{¶ 24}** The constitutionality of H.B. 463 continues to be argued before this court, and the court has not definitively settled that issue. We will eventually have to resolve that question after conducting a substantive analysis. In doing so, I believe that we will need to reexamine our pre-H.B. 463 caselaw to determine whether that line of decisions is in accord with the separation-of-powers doctrine.

**{¶ 25}** For these reasons, I respectfully dissent and would grant the writ of mandamus for the reasons stated in my separate opinion in *Khumprakob*.

_____

Terry J. Lodge and Jensen Silvis, for relators.

Ronald J. O'Brien, Franklin County Prosecuting Attorney, and Timothy A. Lecklider, Assistant Prosecuting Attorney, for respondents.

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace, for intervening respondents.

Porter, Wright, Morris & Arthur, L.L.P., and L. Bradfield Hughes, urging denial of the writ for amici curiae Affiliated Construction Trades Ohio Foundation, Ohio Chamber of Commerce, Columbus Realtors, Ohio Oil and Gas Association, Ohio Chemistry Technology Council, and American Petroleum Institute.

_____